UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NICOLE BEAL                                                         CIVIL ACTION
ON BEHALF OF M.G.

VERSUS                                                              NO. 14-2728

CAROLYN W. COLVIN, ACTING COMMISSIONER              SECTION "I" (2)
OF SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Nicole Beal, on behalf of her minor child, M.G., seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for childhood Supplemental Security Income ("SSI") benefits under Title XVI of the Act. 42 U.S.C. § 402 et seq. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

Instead of filing a memorandum of facts and law as ordered, Record Doc. No. 18, plaintiff filed a motion for summary judgment. Record Doc. No. 20. The court treats her summary judgment motion as a memorandum of facts and law regarding her instant appeal from the Commissioner's final decision. Defendant filed a timely reply memorandum of facts and law. Record Doc. No. 22.

I.  PROCEDURAL HISTORY

M.G. was five years old when his mother applied for SSI on his behalf on March 1, 2012, alleging a disability onset date of September 15, 2011, due to attention

deficit hyperactivity disorder. (Tr. 136, 149-51). After the application was denied, plaintiff filed a timely request for a hearing, which was conducted before an ALJ on May 7, 2013. (Tr. 29-44). The ALJ issued a decision on August 21, 2013, finding that M.G. was not disabled. (Tr. 13-24). After the Appeals Council denied plaintiff's request for review on September 26, 2014 (Tr. 1-4), the decision of the ALJ became the final decision of the Commissioner for purposes of this court's review.

II.   STATEMENT OF THE ISSUE ON APPEAL

Plaintiff contends that substantial evidence does not support the ALJ's findings that M.G. has less than marked limitations in the domains of attending and completing tasks and interacting and relating with others.

III.  ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

A.   M.G. was a pre-schooler on the date of his application and is currently a school-age child.

B.   He has severe impairments consisting of attention deficit hyperactivity disorder, asthma and personality disorder.

C.   M.G.'s impairments do not meet or medically equal the criteria for any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

D.   He does not have an impairment or combination of impairments that functionally equals the severity of the Listings.

E.   He has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with

        others, moving about and manipulating objects, and health and physical well-being.  He has no limitations in the domain of caring for himself.

    F.    M.G. has not been disabled since March 1, 2012, the date his application was filed.

(Tr. 16-24).

IV.    ANALYSIS

    A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 389 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360.  This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Harper v. Barnhart, 176 F. App'x 562, 565 (5th Cir. 2006); Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To qualify for SSI, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(D). In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("1996 Act"), which redefined the eligibility standard for children under the SSI disability determination process. This statute applies to all child disability applicants who filed claims on or after August 22, 1996, or whose cases were not finally adjudicated before that date. Id. § 211(d)(1)(A)(I).

According to the 1996 Act, "[a]n individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted

4

or can be expected to last for a continuous period of not less than 12 months." Id. § 1382c(a)(3)(C)(i).

The Commissioner's final regulations in effect at the time of the ALJ's decision provide a three-step procedure for evaluating a child's claim of disability. The first step is to determine whether the claimant is engaging or has engaged in substantial gainful activity. If the answer is "yes," the claimant will be found not disabled. If the answer is "no," the second step requires a determination whether the claimant has a medically determinable severe impairment. If not, the claimant will be found not disabled. If the claimant has such an impairment, the last step is to determine whether the impairment meets or equals in severity, either medically or functionally, an impairment listed in Appendix 1, Subpart P, Part 404 of the Commissioner's regulations (the "Listings"). If the claimant has such an impairment and the impairment meets the duration requirement, the claimant will be found disabled. If not, the claimant will be found not disabled. 20 C.F.R. § 416.924 (2013).

An ALJ must assess functional equivalence in children by examining the child's limitations in six domains: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." Id. § 416.926a(b)(1). An impairment or combination of impairments functionally equals

a listed impairment if it results in marked limitations in two domains or an extreme limitation in one domain.  Id. § 416.926a(a).

The claimant has the burden of proof at all steps of the inquiry.  Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin., 783 F.3d 847, 850 (11th Cir. 2015); Taylor ex rel. D.M.T. v. Colvin, 555 F. App'x 643, 643-44 (8th Cir.), cert. denied, 135 S. Ct. 456 (2014) (citing Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004)); E.R.H. v. Comm'r of Soc. Sec. Admin., 384 F. App'x 573, 575 (9th Cir. 2010); Lopez v. Barnhart, 176 F. App'x 618, 619 (5th Cir. 2006).

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."  Martinez, 64 F.3d at 174; accord Perez v. Barnhart, 415 F.3d 457, 462 (5th Cir. 2005).

B.     Factual Background

The claimant's mother, Nicole Beal, testified that M.G. is a six-year-old first grader who has not repeated any grades.  She stated that her son was diagnosed with attention deficit hyperactivity disorder by Dr. Hammer, a psychiatrist at Jefferson Parish Mental Health, and that M.G. has been taking medication prescribed by Dr. Hammer since January, 2012.  She said she does not believe the medicine is working as well as it should because M.G. still gets into trouble at school.  (Tr. 32-33).

Beal stated that M.G. sees Dr. Hammer once a month and that he currently takes 50 milligrams of Vyvanse. She testified that Dr. Hammer started her son on 10 milligrams and then increased the dosage. She stated that M.G.'s behavior is better when he takes the medication, but he is very impulsive and does not listen when the medicine wears off. (Tr. 33). She testified that Dr. Hammer increased the dosage to 50 milligrams the previous month to see if it would last longer. She stated that she does not know exactly when the medication wears off because she is not at the school, but that M.G.'s teachers call her a lot and he always has problems on the bus home. She said she would tell Dr. Hammer at M.G.'s appointment this week that the medicine is not helping.

Beal testified that M.G. cannot stay still on the bus, which is a safety issue because the bus driver has to pull over to make her son stop misbehaving. She said that he fights with other children and stands up on the bus seat. She stated that his teacher has to redirect him often at school and that he throws food and gets into fights in the cafeteria. (Tr. 34). She testified that her son is at a new school this year because she recently moved to Chalmette, Louisiana. She said that the daily phone calls from the school were overwhelming the previous year, that M.G. was suspended numerous times and that there was talk of putting him in an alternative school. Beal stated that her son has no physical problems. (Tr. 35).

M.G. testified that he is in first grade and his teacher is Mrs. Egan, but that she had a baby and Ms. Martin is his teacher now. He said he takes his medicine daily, but not

on weekends. He stated that he can concentrate better when he takes the medicine and that he is able to do his homework with some help. (Tr. 36-37).

M.G. testified that he does not get along with other children and has problems at school, but does not tell his teacher that he has problems. He stated that his mother tells the doctor about his problems and that she hears about the problems from his teachers. (Tr. 37-38). He said he does his homework when he gets home from school and he plays games with his brother or plays outside after finishing his homework. (Tr. 38).

    C.    <u>Medical Evidence</u>

I have reviewed the medical records in evidence and the ALJ's summary of the medical and school evidence. (Tr. 17-25). I find the ALJ's summary of the medical and school evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

    D.    <u>Substantial Evidence Supports the ALJ's Findings Regarding the Domains of Attending and Completing Tasks and Interacting and Relating with Others</u>

At step three of the sequential evaluation, the ALJ held that M.G.'s severe impairments of attention deficit hyperactivity disorder, asthma and personality disorder do not meet or medically equal in severity any listed impairment. Beal does not dispute this finding, but argues that the ALJ erred by finding that M.G.'s impairments do not functionally equal the Listings. Plaintiff contends that the evidence supporting the ALJ's findings that M.G. has less than marked limitations in the domains of attending and

completing tasks and interacting and relating with others "is less than a scintilla of the overall evidence relevant to [these] domain[s]." Plaintiff's memorandum, Record Doc. No. 20-1 at p. 3. Beal argues that the evidence "overwhelmingly suggests" that M.G. is entitled to SSI "for his ADHD, Asthma, and ODD [Oppositional Defiant Disorder][1] because substantial evidence in the record suggests he meets functional equivalency requirements" of marked limitations in these two domains. Id.

Plaintiff's argument is not persuasive. First, contrary to the assertion in her memorandum, M.G. was never diagnosed with oppositional defiant disorder. On December 21, 2011, M.G.'s treating pediatrician, Harish G. Anand, M.D., diagnosed attention deficit hyperactivity disorder and prescribed Procentra.[2] (Tr. 294). Byron Hammer, M.D., M.G.'s treating psychiatrist, diagnosed him with attention deficit hyperactivity disorder and disruptive behavior disorder, not otherwise specified, and prescribed Vyvanse[3] on January 27, 2012. (Tr. 315). Christine Powanda, Ph.D., a

---

[1]"Oppositional defiant disorder (ODD) is a recurrent or persistent pattern of negative, defiant, or even hostile behavior directed at authority figures." Like attention deficit hyperactivity disorder, oppositional defiant disorder is a type of disruptive behavioral disorder. The Merck Manual (rev. Mar. 2014 by Josephine Elia, M.D.), http://www.merckmanuals.com/professional/pediatrics/mental-disorders-in-children-and-adolescents/disruptive-behavioral-disorders (visited Oct. 6, 2015).

[2]ProCentra (generic name: dextroamphetamine) is a central nervous system stimulant that affects chemicals in the brain and nerves that contribute to hyperactivity and impulse control. It is used to treat narcolepsy and attention deficit hyperactivity disorder. Drugs.com (updated Sept. 2015), http://www.drugs.com/mtm/procentra.html (visited Oct. 6, 2015).

[3]Vyvanse (generic name: lisdexamfetamine) is used to treat attention-deficit hyperactivity disorder and may help to increase attention and decrease impulsiveness and hyperactivity in people with that disorder. PDRhealth.com (PDR Network, LLC 2015), http://www.pdrhealth.com/drugs/vyvanse (visited Oct. 5, 2015).

psychologist who examined M.G. at the request of the Commissioner on May 17, 2012, diagnosed attention deficit hyperactivity disorder only. (Tr. 334).

Second, and more importantly, the evidence as a whole indicates that M.G.'s behavior problems improved after he began treatment with medication, as the ALJ stated. M.G. started taking ProCentra on December 25, 2011 (Tr. 325), but Beal stopped giving it to him on January 13, 2012, because she thought it was not working and it made him too emotional. (Tr. 294). He did not begin taking Vyvanse until January 27, 2012. In her appeal, Beal emphasizes her own testimony about her son's behavior problems and the multiple misconduct reports that he received while in kindergarten in 2011-2012. However, on March 15, 2012, his kindergarten teacher, Amy Stubbs, completed a Teacher Questionnaire that addressed the six domains of functioning. Stubbs's Teacher Questionnaire supports the ALJ's findings.

In the domain of attending and completing tasks, Stubbs indicated that M.G. had only a slight problem in waiting to take turns and changing from one activity to another without being disruptive and that he had no problems with eleven other listed tasks. She said she based these observations on his behavior since he had been on medication. Stubbs stated that, "[b]efore [M.G.] was put on medication, he could not focus or complete tasks and could hardly function in the classroom or other areas of school." (Tr. 164).

In the domain of interacting and relating with others, Stubbs said that M.G. had slight problems with six of the listed activities and no problems with the other seven. She noted that he "was on a behavior plan, removed from class, & suspended, prior to meds, [but] now he is able to function." (Tr. 165). Although the domain of caring for himself is not at issue in this case, Stubbs indicated in her responses under that heading that M.G. had only slight problems in handling frustration, being patient, appropriately asserting his emotional needs, responding appropriately to changes in his own mood and using appropriate coping skills to meet the daily demands of the school environment, which are areas of functioning that overlap with the two domains at issue. (Tr. 167). Finally, Stubbs stated that M.G. "is able to function in the classroom when on meds. When not on meds, it is as if he is driven by a motor." (Tr. 168).

Other school records from 2011-2012 provide ample support for Stubbs's comments and the ALJ's findings. A Behavior Detail Report from his school synthesizes all of M.G.'s misconduct reports that year. (Tr. 172-77). In the first semester, before he started taking medication, he had eleven misconduct reports leading to various forms of discipline, including one detention, one removal from class, one suspension from physical education class for the remainder of the week and two suspensions from school. After the winter break, M.G. was not on any medication between January 13 and January 27, 2012. He had six reports of misconduct between January 11 and January 25, 2012. He was removed from class on January 18 and was suspended as a result of his

11

misbehavior on January 19, 2012.  However, after he began taking Vyvanse, he had only one report in March 2012, for which he received a disciplinary "time out."

In the 2012-2013 school year, M.G. was in first grade and taking medication regularly.  He received 15 misconduct reports between August 22, 2012, and March 15, 2013, all of which gave him a grade of "C" for daily class conduct, except once when he received an "F."  It appears that the only discipline for these events was to send the reports or a letter to M.G.'s mother, asking her to speak to him about the problems.  (Tr. 239-53).  In addition to the daily conduct reports from his teacher, M.G. received a written reprimand for misbehavior on the bus on October 19, 2012.  (Tr. 248).  Beal discussed this with Dr. Hammer on November 7, 2012, and the psychiatrist advised her to try having M.G. sit by the bus driver.  (Tr. 358-59).  On December 10, 2012, Beal reported that M.G.'s behavior had improved after he sat by the driver.  (Tr. 360).  M.G. was reprimanded and received a one-half recess detention as a result of misbehavior on the bus on February 27, 2013.  (Tr. 252).

The school records as a whole therefore support the ALJ's findings that M.G.'s behavior improved when he was on medication to the point that his limitations in the domains of attending and completing tasks and interacting and relating with others were less than marked.  A medical condition that can reasonably be remedied by surgery, treatment or medication is not disabling.  Muckelroy v. Astrue, 277 F. App'x 510, 511-12 (5th Cir. 2008) (citing Burnside ex rel. Burnside v. Bowen, 845 F.2d 587, 592 (5th Cir.

1988), abrogated on other grounds by Sullivan v. Zebley, 493 U.S. 521, 527 (1990)); Hebert v. Barnhart, 197 F. App'x 320, 323 (5th Cir. 2006) (citing Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1988)); Leblanc v. Chater, 83 F.3d 419, 1996 WL 197501, at *3 (5th Cir. 1996); Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987).

The ALJ relied on the opinions of two non-examining experts, psychologist Charlotte Ducote, Ph.D., and pediatrician Henry Simon, M.D., who reviewed M.G.'s records. These doctors opined on May 31, 2012, that M.G. had less than marked limitations in the two domains at issue. (Tr. 50-51). "State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(i). "Although ALJs 'are not bound by any findings made by State agency medical or psychological consultants,' they must consider such findings as opinion evidence." Alejandro v. Barnhart, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003) (quoting 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i)) (emphasis added); accord Butler v. Barnhart, 99 F. App'x 559, 560 (5th Cir. 2004). It is well established that the ALJ may rely on the non-examining expert's function-by-function analysis of the impact of claimant's impairments on his ability to perform various tasks. Beck v. Barnhart, 205 F. App'x 207, 213-14 (5th Cir. 2006) (citing Onishea v. Barnhart, 116 F. App'x 1, 2 (5th Cir. 2004); Myers v. Apfel, 238 F.3d 617, 620-21 (5th Cir. 2001);

SSR 96-8p, 1996 WL 374184); accord Weatherspoon v. Astrue, No. 12-2998, 2013 WL 5507293, at *5 (E.D. La. Sept. 30, 2013) (citing Onishea, 116 F. App'x at 2).

The ALJ also cited Dr. Powanda's opinion. Beal told the psychologist that M.G.'s Vyvanse had recently been increased by Dr. Hammer and that her son's behavior had improved since taking the medication, although Beal reported continued problems at school when the medicine wore off in the afternoons. Dr. Powanda observed that M.G. was polite, somewhat fidgety and distractible, but not anxious or irritable. She opined that he had fair sustained attention, made a good effort and was able to follow simple verbal directions. (Tr. 331-34).

The medical evidence from the Jefferson Parish Human Services Authority further supports the ALJ's findings that M.G. has less than marked limitations in the domains of attending and completing tasks and interacting and relating with others. The treatment plan dated December 7, 2011, which is signed by Dr. Hammer and a clinician, Sheila Townsend, states that M.G. "has had difficulty managing his impulses and is being disruptive at school and is being aggressive with his peers and oppositional with his teachers." (Tr. 320).

On January 3, 2012, at a family counseling session with an unnamed staff member while M.G. was taking ProCentra, Beal reported that his behavior had improved immediately when he started the medication. The staff member noted that M.G. was able

to sit fairly still for an hour, was calm and compliant, and completed the activity given to him without frustration at the staff member's interjections. (Tr. 325).

Upon initial psychiatric evaluation on January 27, 2012, Dr. Hammer found that M.G. was able to focus and had no difficulty attending to the examiner, but was easily distracted. Dr. Hammer was unable to perform memory tests for that reason. M.G.'s mental status examination was otherwise unremarkable. Dr. Hammer summarized his findings by stating that M.G. had "mild distractions and activity level." He diagnosed attention deficit hyperactivity disorder and disruptive behavior, not otherwise specified, and assigned a GAF score of 65,[4] indicating mild symptoms. (Tr. 304, 313-14).

On the same date, which was after M.G. had stopped taking ProCentra and before he started on Vyvanse, Beal told an unnamed staff member during a family counseling

---

[4]"GAF" stands for Global Assessment of Functioning.
A GAF score represents a clinician's judgment of an individual's overall level of functioning. See American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 32 (4th ed. 2000). The reporting of overall functioning is done by using the GAF Scale, which is divided into ten ranges of functioning–e.g., 90 (absent or minimal symptoms) to 1 (persistent danger of severely hurting self or others, or unable to care for herself). The GAF rating is within a particular decile if either the symptom severity or the level of functioning falls within the range. Lower GAF scores signify more serious symptoms.
George v. Barnhart, 458 F. Supp. 2d 314, 323 n.5 (S.D. Tex. 2006).
"A GAF score of 61-70 reflects mild symptoms or 'some difficulty' in those areas, but the individual 'generally function[s] pretty well.'" Sims v. Barnhart, 309 F.3d 424, 427 n.5 (7th Cir. 2002) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 30, 32 (4th ed. 1994)); accord Bartyzel v. Comm'r of Soc. Sec., 74 F. App'x 515, 520 (6th Cir. 2003) (citing DSM-IV-TR). A GAF score from an acceptable medical source is not determinative, but it is a medical opinion that should be weighed with all of the relevant evidence. "Global Assessment of Functioning (GAF) Evidence in Disability Adjudication," Social Security Administrative Message AM-13066, ¶ E; available at pp. 18-24 of the New York State Bar Association's seminar materials for "Moving Towards Civil Gideon," http://www.nysba.org/WorkArea/DownloadAsset.aspx?id=51489 (visited Oct. 6, 2015).

session that she was concerned her son might be expelled because of his recent aggressive behavior with other students. The staff member noted that M.G. was quiet and non-responsive to questions, but was polite and engaged in an activity. (Tr. 325-26).

At the next counseling session on February 16, 2012, Beal reported that her son's behavior had been positive, with good daily marks and reports from his teachers that he was getting his work done and even assisting other students. She stated that he was able to complete his homework more easily since being on medications. (Tr. 326).

Progress notes from the next family counseling session and from Dr. Hammer on March 12, 2012, stated that M.G. was doing well, had moderately improved his behavior and attention, had no significant behavior problems and was still able to follow rules after his medication wore off about 2:00 p.m. Dr. Hammer increased M.G.'s Vyvanse dosage to try to make it last longer and assessed the child with an improved GAF score of 70. M.G. was scheduled to be discharged from counseling. (Tr. 327-28).

At subsequent visits for medication management in June, July, November and December, 2012, Dr. Hammer noted either minimal improvement or minimal worsening in M.G.'s symptoms, which the psychiatrist sometimes classified as mild and sometimes as moderate in severity. Throughout that period, Dr. Hammer found that M.G.'s mental status examination was within normal limits and that he had a fair ability to concentrate. (Tr. 352-54, 358-61). When Beal reported on March 22, 2013, that M.G. was having problems at school again, Dr. Hammer noted minimal worsening of the child's symptoms

and increased his dosage of Vyvanse. (Tr. 362-63). Finally, on June 11, 2013, Beal told Dr. Hammer that M.G. had passed first grade and had some good and some bad days on his medications. The child's mental status examination was again within normal limits and he exhibited fair concentration. Dr. Hammer opined that M.G.'s symptoms were minimally worse and that his behavior had moderately worsened. The doctor increased M.G.'s dosage of Vyvanse and added Clonidine[5] to help his sleep and behavior. (Tr. 364-65).

As the above summary indicates, the medical and school records generally reflect only mild to moderate symptoms of attention deficit hyperactivity disorder and disruptive behavior disorder, with improvements in M.G.'s behavior with medication. Although there are indications of setbacks at times, it is the ALJ's province to weigh the evidence and resolve any conflicts. Newton, 209 F.3d at 452; Escalante v. Astrue, 286 F. App'x 179, 180 (5th Cir. 2008) (citing Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990)).

Substantial evidence supports the ALJ's findings that M.G. has less than marked limitations in the domains of attending and completing tasks and interacting and relating with others. Accordingly, plaintiff's assignment of error lacks merit.

---

[5]Clonidine (brand name: Kapvay) is an extended-release medicine used to treat attention-deficit hyperactivity disorder. Kapvay works differently from other medications for this disorder because it does not stimulate the central nervous system. PDRhealth.com, http://www.pdrhealth.com/drugs/kapvay (visited Oct. 6, 2015).

## **RECOMMENDATION**

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's appeal be denied and her complaint be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[6]

New Orleans, Louisiana, this __19th__ day of October, 2015.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[6]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.